Thank you, Your Honor. On behalf of the Epcot, Ms. Kathleen Hamel, on behalf of the people, Mr. Jay Hart. Good morning. Good morning, Your Honor. Good morning, counsel. This appeal is taken from an order dismissing a post conviction petition after second stage proceedings. We've raised two questions in our brief. The first is whether the petition made a substantial showing that the petitioner was denied his right to effective assistance of counsel during plea negotiations. And we also argue alternatively that post conviction defense counsel failed to provide reasonable assistance when he presented that claim to the circuit court on the petitioner's behalf. The petitioner originally was charged with both intentional and knowing murder in connection with the death of his wife, who was strangled to death. And he was charged with felony murder for the same death, based on a theory that he had committed robbery when after killing his wife, he used her car to transport her body to a dumpster. And so for the death penalty. Under our criminal code, people who qualify for the death penalty, but don't receive it, also could receive up to natural life as a sentence. However, it's not a mandatory sentence. The court would have discretion to impose any sentence that was available for murder, but could impose natural life as well. And the ordinary minimum for felony murder predicated on robbery in this case would have been 20 years. The state considered pursuing the death penalty in this case for six or seven months, but ultimately decided not to do it. And then it continued to proceed towards trial. The pretrial period took about two and a half years here. And during, throughout it, everything that took place indicated the parties intended to go to trial. However, the trial, the final trial date was set February 21st, 2007. On February 20th, the defendant appeared in court and he entered a fully negotiated guilty plea to one count of intentional murder in exchange for a 35-year prison sentence. He did not file a post-plea motion and he did not take a direct appeal. Which leads to the first question. Does the Supreme Court decision in Hampton require a motion to withdraw a plea or take an appeal to avoid an allegation of finding a forfeiture? Not in a case like this, for many reasons. First of all, in Wilk itself, it was recognized that people who do not plead, who do not take a direct appeal can challenge their convictions in collateral filings. I mean, you would, of course, be limited to constitutional claims. But, and then the other, the other reason why it's here is the claim is ineffective assistance of counsel. And so we can't expect counsel who is ineffective to have supported the petitioner's effort to raise this ineffectiveness. The allegation is that the attorney said that natural life was mandatory in the attorney's petition. And I think the pro se petition said the attorney's, a trial attorney said it was inevitable. But either way, let's assume for a second that that's deficient performance because it's not inevitable or mandatory. How do you get through the prejudice prong of strickling on that? Well, the prejudice prong was addressed in the pro se petition, unfortunately not in the one that was filed by Mr. Brown. But in the pro se petition, the defendant indicated that he contemplated presenting partial affirmative defenses. And we know that because he says that he was pressured into pleading guilty by being told that they would not be available were he taken to trial only on the felony murder charge, which is part of his allegation. His allegation was that his attorneys told him that if he didn't take the plea offer, the state was going to drop everything except the felony murder. And he gets around the usual admonitions on the basis that he was coached. Because the trial judge asked him, I think, a fairly extensive set of admonishments. Is there anything you want to say? Were you threatened? Were you pressured? And he answered, of course, no to all those questions. So he comes back and says because he was being coached to that. Is that his answer? That is his answer. And because these are second stage proceedings, we have to assume that all his allegations of fact are true. But didn't the trial court consider both the pro se post-conviction petition in addition to the amended post-conviction petition filed by counsel? It looked like he did. So under this scenario, where is the prejudice then? Well, part of our problem here is that defense counsel, post-conviction defense counsel, didn't do a very good job of consulting with the defendant, it appears. And the reason I, and so that's why we argue alternatively that this case should be remanded for second stage, for new second stage proceedings. But as far as what we do know To consider what? I mean, if the trial court considered all of this, what would there be enough to consider? Well, it would be the job of post-conviction defense counsel to fix this petition, to make it so that it did address the prejudice prong clearly. What I can, what we can glean from the petition that, what with the filings we have, not from Mr. Brown's petition, because he doesn't address it at all, but from the pro se petition, the petitioner thought he had a defense to the robbery. These are funny facts for a robbery. This is a situation where the robbery is taken by the victim's spouse after she is dead for the purpose of transporting her body to another place. There's a lot of strange things. And in my brief, I cited some case law, which has been repudiated by courts, but not expressly overruled. And this, he was contemplating a jury trial. And this is the kind of thing where it's not entirely unreasonable for a defense team to think, well, we could present this argument and perhaps avoid the felony murder conviction that might stick in the craw of a jury. Can we examine that on the issue of prejudice that was alluded to earlier? What is the argument that he did not commit the robbery based on what? Well, there's, his theory in his pro se petition was that he believed that because of the way the robbery statute is worded so as to exempt circumstances where hijacking occurs, which is where a car is taken or a motor vehicle is taken from the immediate presence of the victim, that a car ever could occur. And vehicular hijacking would not have qualified him for the death penalty or a natural life. And therefore, what he really did was vehicular hijacking and not robbery. And so he had the very simple defense of saying, you charged me with the wrong crime. Except that you alluded to Strickland and Lewis say it would be a robbery if somebody is involved in an instance such as this and then without having informed the intent before the fight that they take property after the altercation, that would still be a robbery. So if the case law is now clear by the Illinois Supreme Court, where would that go following the remand? Well, the other argument that he was making or that was made on his behalf by his trial attorneys before the plea was that robbery cannot be committed against one's spouse. But the legislature hasn't provided for spousal immunity. The elements of theft are different. I mean, that really... It's a troubled argument, but it isn't one that's ever been definitively ruled out. And again, I believe his thinking is I could have at least gotten this stuff in front of the And then the other thing was that he thought he had partial affirmative defenses to the knowing and the intentional murder of self-defense and intense provocation. So those were his theories. The vehicular hijacking theory that the defendant raised in his pro se petition was addressed by the trial court in the order, correct? It was. It was kind of blown out of the water, basically. And you don't raise that as a... No, no. I think he's... I think if you look at the robbery statute, they are only exempting the takings that would fall under the vehicular hijacking statute. But why does the attorney on appeal have to strike that? Why does the post-conviction counsel have to raise something totally different from the pro se petition? I thought the case law said that it's not incumbent upon counsel to raise a totally different issue not raised in the pro se petition. But this wouldn't be a totally different issue. This would be addressing the prejudice prong of the Strickland standard. And he was alleging ineffective assistance of counsel. And so you can't allege ineffective assistance of counsel completely without also addressing the prejudice prong. And so that was the main problem here. The other problem that I think is worrisome on this record is the fact that Brown made some significant changes in the language in the petition that he rewrote. During his rewriting of the petition, he said that defense counsel had told the defendant that the natural life sentence would be mandatory when the defendant himself actually alleged that he was told that conviction of felony murder would be inevitable and that natural life would be inevitable, which could be in the sense of extremely likely in the opinion of defense counsel. That's an entirely different, actually a very weaker argument perhaps, something that would need some clarification, I would think, at a second stage hearing, which didn't happen here. And the other thing is that he, it's this kind of bizarre mistake where he alleged that counsel also pressured the defendant into pleading guilty by showing him a videotape made of the defendant's relatives encouraging him to plead guilty. He doesn't attach a claim to that, possibly, if not probably, because it doesn't exist, because the only mention of a tape made by the petitioner in his own petition, his pro se petition, is one that was made while the state was contemplating seeking death, and the, apparently his attorneys had his relatives make a tape addressed to the prosecutors begging them not to, not to go for the death penalty. And he referred to that in the pro se petition as, because he says defense counsel mentioned it during their conversation in order to make him think that the state's mercy had been tapped, had been exhausted, and he couldn't expect anything else from them after they had forgone the death penalty. And it seems like he's just, what it does is that these changes that Brown made to the allegations of the petition, they raise serious concerns about the quality of his communications with the petitioner. He did file a 651c petition, I mean certificate, but we still have to look at the record to see if that, if there's, if it looks like it's a valid certificate. And here the quality of his communications and the reading, his reading and review of the pro se petition raises some question as to whether he really understood what the petitioner's claims were about. Well, the trial court, excuse me, the trial court certainly made some comments about the quality of the representation, and they were all very positive, correct? They, he, those comments were directed at defense counsel. You know, the ones who, you know, were dealing with him on the plea. The quality of Mr. Brown's representation really was never brought up. There never really was a hearing on this petition. The court decided it without a hearing. Counsel, he's alleged ineffective assistance against both trial counsel and post-conviction counsel, correct? Yes. As a point of clarification, level of assistance with regard to trial counsel and a strict one is different than it is, standard is different than it is for post-conviction counsel, correct? It is, it is reasonable assistance, and we get that, what reasonable assistance means from Supreme Court Rule 651C, which is the minimum for it would be to consult with your client, to examine the record, and to make whatever amendments are necessary to the petition to adequately present his claim. And here the failure to adequately present the prejudice prong of the ineffective assistance claim is definitely problematic. And then there is also the problem that Brown didn't support the new allegations of fact that he made in the rewrite petition, the rewritten petition that he submitted with an affidavit from the petitioner, as required under Section 122-1B of the Post-Conviction Hearing Act, attesting to the truth of the allegations. And one must think that if Brown had at least approached the petitioner regarding the allegations, he could have gotten some of what it was that he really wants to allege. There at least should have been some sort of a hearing on this petition, I think, at a minimum, given the discrepancies between the pro se petition and the act. All the problems with the representation, let's just assume all those problems are true, and it's all deficient representation that you talk about. I mean, really, doesn't this thing boil down to the prejudice element and basically your argument about robbery? I mean, does it come down to that? Because let's assume all this stuff is deficient performance. I mean, you have to show prejudice. And I mean, aren't we talking about the only thing you're really arguing as far as prejudice goes is robbery, that this robbery claim should have been made, whether it's lack of force or the marital privilege, marital issue, correct? Yes, yes. And again, our position on that is that these, although these are hardly persuasive defenses, especially for a court of review, they could have been presented to a jury and they might have. I'm not really saying that the defendant is entitled to jury nullification, but there is a possibility he might have chosen to take that risk if he had not been terrified into pleading guilty by being told that he was facing an inevitable conviction with a natural life or an inevitable sentence of natural life, whichever it was, and neither of which was necessarily true. Does that, I'm sorry, does the prejudice problem strictly when you talk about a guilty plea, I mean, the defendant has to allege actual innocence or articulate a plausible defense. Now, are we talking about jury nullification as articulating a plausible defense? Oh, no. No, when I say the plausible defense would be these defenses that haven't been specifically ruled out by on-point rulings by the Illinois Supreme Court, which are those that I suggested in our brief. Thank you. You'll get additional time on rebuttal. Okay, thank you. Mr. Hoffman? May it please the Court, Counsel, I am Jay Hoffman of the State's Attorneys Appellate Prosecutor's Office, and as always, it's my pleasure to represent the people of the State of Illinois. Because it's the first issue chronologically, I will go to Justice I recognize that Stroud seems to and will seem to say that Hampton was wrong, but Hampton has never been overruled. Hampton's never been criticized. So I look for the differences in those cases. If you look at Stroud, what the people argued there was that because they was raised below. It's different than the claim we're making here, and I think that's different from Wilk, too. What we're saying here is well-recognized post-conviction law is that if something has been decided on direct appeal, it is res judicata. If something could have been raised on direct appeal and was not, it is forfeited. And that's our position here. Except here, now to play the other side of the coin, in this case, the defendant did not take a direct appeal, did he? That's correct, Your Honor. So if he didn't, Hampton says that if you take a direct appeal, res judicata is going to apply to an issue you didn't raise. If he doesn't take a direct appeal, how can res judicata in the rule in Hampton apply here? Because he had the ability to raise it. You're saying that, oh, well, if he doesn't do that, then he can come back later, even though they're suffering. Remember, post-conviction forfeiture law is concerned about things that could have been raised. Raised where? Raised where? He could have raised it on direct appeal if he wanted to because he could have. The defendant here, he didn't take a direct appeal, did he? No, he didn't. But he could have. He could have raised the same claim he's raising, exact same claim he's raising now. He could have come in under Krankel and said, within 30 days, he said, Your Honor, I lied. They forced me to plead. I didn't want to plead. I want a Krankel hearing. He didn't do that. But the facts of Hampton really are distinguishable because there was a direct appeal. So Hampton really is an opposite. Well, it's certainly distinguishable from the facts here, so. It's distinguishable, Your Honor, but again, if you look at the cases from the Illinois Supreme Court and all up and down the board, the cases say, when they speak of res judicata and forfeiture, with the forfeiture element, it's things that could have been raised on direct appeal, things that they knew. They are for things that come to the defendant later. But there's a missing link in your analysis. Could have been raised on direct appeal. I think you're shooting a graph. If a direct appeal was taken, do you have any case law for the proposition, you must take a direct appeal first, or you can't file a post-addiction petition? No. As a matter of fact, in the reply, they cited two cases, people v. Miranda and people v. Bonilla, both First District cases, which are a little contrary to my argument on that basis, which say that if you don't take a direct appeal, then that forfeiture doesn't apply. However, this Court has never said that. The Illinois Supreme Court has never said that. And those two cases, please look at them, cite nothing for that proposition. And I would suggest that the law goes back before that. You are required to raise issues post-trial, post-pleading within 30 days. If you don't do that, you're out of the box. You're required under the post-conviction. So let me see if I can follow up. What is the argument, the rule you're asking us to announce or adapt? If you contain a direct appeal, but you choose not to, res judicata applies to your post-conviction petition. Is that what you're asking us to announce? Not res judicata, because it wasn't decided. The courts sometimes confuse that. But forfeiture, my position is, Your Honor, the rule is, if you do not raise something which could have been raised in a direct appeal... Even if you didn't take a direct appeal. That's right, because it could have been raised in a direct appeal. If you decided to take a direct appeal, it's your choice whether to take a direct appeal or not. And it's your choice whether to file within 30 days a post-trial or a post-pleading motion. It's your decision. It doesn't matter whether you don't take a direct appeal because you don't file that post-pleading motion, or if you don't do it because you don't want to, and then later on decide, oh, well, you know, I'm going to come up with this. My position, Your Honor, is merely that, contrary to what the rule for post-conviction applies, if you did or if you did not take a direct appeal. And for authority for that position, you're using... Do you have a case in point? No. I'm sorry, Your Honor. What's the case that supports what you just said? None. I'm just saying that the rule... I'm just saying that, except for Miranda and Bonilla, no cases say that that well-established forfeiture rule for post-conviction does not apply if you decided not to take a direct appeal. And I would say... I thought it didn't apply also for claims that arise from facts outside of the record, which clearly would apply here because the claim about conversations between the attorney and the client that took place off the record. And you're right, Your Honor, and my position on that is these facts could have been on the record. He had the right to take, within 30 days, he had the right to complain about counsel and take a crankle hearing. My position is that you blame the person who didn't do what they're supposed to do, and in this case, that's the defendant. You would probably do away with about 90% of the PC cases we would have up there. It really has to do with the work of the court. That's not what I did that night. All right, go on if you want to do that argument. And with regard to the other issues, just very quickly, I think they were covered in the brief. Again, and Your Honors have commented regarding many of the arguments to both issues. Perhaps someone else would have done this post-conviction petition differently. That's not what even Strickland says. Strickland says, and this is not even as strange as Strickland, that if you remember the original ruling, it says no two defense attorneys would handle a case the same. And you are not required to add things which were not in by the defendant. As you alluded to, the circuit court in this case looked to both petitions, both the amended petition and the original petition, and dealt with the prejudice issue, dealt with the issues that were there. And also, I want to stress, again, a valid 604, I'm sorry, 651 certificate was filed. Several times on the record, counsel said, I'm consulting with the defendant. He said he read everything. He said at one point, I've recently consulted again and I need to change something. And more importantly, the defendant was asked on the record and the defendant about the 651 certificate, if it was correct, if the representations in it were correct. And he said yes. So I don't see how you can come now and say, okay, I don't see how you can come now and say that the representation was unreasonable. So when all the issues he wanted were looked at, when he said, yeah, these are the issues I want looked at, and by saying, okay, well, he didn't count the number of pages in the original PC correctly. He may have misunderstood about what this video was for. And I would say if you look at the paragraph regarding that video in the amended, it talks about how the original defense counsel used that in order to get him to plead. It ties right into the theory that the defendant had in the pro se that, well, they were trying to get me to plead. They were trying to get me to plead. Obviously, if you take the death penalty off the table, you're going to be more likely to plead. Let's talk for a minute about the issue of robbery and theft. And counsel brought up the fact that the defendant might have been able to present a different picture to the jury. I mean, do the facts of this case really present the elements of robbery? Doesn't there have to be some concurrence between defendant's threat of force and the taking of property? And how do you look at that in the Lewis case? Absolutely not. As, again, the court has alluded to, Lewis says Strickland expressly repudiated Tiller. If you look at Strickland, it says, We do not, however, agree with the statement in Tiller that it was necessary to reverse the robbery conviction in that case because, quote, there was no evidence to show that the force exerted against the victim was for the purpose of depriving her of the property taken. That principle is not consistent with this court's earlier ruling in Jordan and unnecessarily restricts the operation of the robbery statute. And if you go to the page before, when they talk about Jordan, they quote a section from Jordan where Jordan, and I will paraphrase here, basically says if two people have a fight in an alley just to have the fight, there's no thought of taking anything. And after one gets smacked and falls, the winner reaches down and takes something, never having thought of robbing before, that's robbery. That's what Jordan says. So there was absolutely no chance of him to succeed on that. I would also say that there was no chance for him to succeed with regard to the other allegation, the theft business, because theft is much different than robbery. And remember, and I think I'll close unless there are other questions on this, what, as Justice Burke pinpointed on, the question here is the prejudice. In order to succeed on a post-conviction claim that he was forced to plead, a defendant has to say that he wouldn't have pled absent the defense attorney's acts, whatever it was, whether it was, you know, like holding him down and misrepresenting the facts or telling him something wrong about the law. But again, as Justice Burke said, beyond that, you must make either a claim of actual innocence, which he certainly can't do here given the facts, or a plausible defense. And here's the key. The question of whether prejudice exists depends in large part upon the prediction of whether a defendant is likely to succeed at trial on those plausible defenses. He's not likely to succeed at all on either one of these. There's simply no chance, and that's why he pled, so that he wouldn't get life or even 60 years. He got 35 years, which is 15 more than the minimum and 25 less than the norm maximum, and they admit that he could get life. On the issue of a defense, can you commit robbery by taking your own property from your wife by use of force? Oh, yes, I believe you can, yeah.  Well, one of the arguments is that, well, I'm not sure that, that was an argument I think that was raised below. I'm not sure that specific aspect of it was raised here. The ones that I reckon, below he raised the question of the vehicular statute, which he has not raised here and which was well addressed and debunked by the circuit court. And here, as I see it, he said that you can't rob from your wife, you can't commit a theft against your wife, but this is not a theft. And also, he said at one point to someone, I wasn't living anywhere. So, and I misrepresented myself, just one final thing. I think also it's very important to note here that counsel says, well, you take all well pleaded facts to be true. That's not quite true. You take all well pleaded facts not contradicted by the record. Here, it was absolutely contradicted by the record. The fact is, he said, he told the judge, nobody forced me, nobody pressured me, nothing was promised except for this deal. Now, he wants to come to you and say, I lied. I lied, so give me post conviction relief. That's improper. If there are no further questions, Your Honor, we would ask this court to affirm the dismissal. Thank you. Ms. Hamel. I hope I don't sound like I'm beating a dead horse. Back to the defenses to robbery. Robbery is a crime that is where you take something from the presence of the victim. And here, the victim was dead. And inside an apartment, she had to be, the defendant put her in a suitcase and dragged her out the door and brought her down the street to the car and lumped the suitcase into the trunk of the car and then drove away. A reasonable jury could decide that that was not a taking from her presence. There was no, nothing in his statement or anything that addressed where the key to the car was. Probably know it was in the car. We just have no idea. So he did have a conceivable defense that hasn't been repudiated by the Supreme Court. And had he gone to trial on that count as well as the other counts, a jury may have decided this is not a situation that justifies a first degree murder conviction. The other thing I want to say is simply that it was, again, or to reiterate, that it was defense, our post-conviction defense counsel's job to shore this petition up to the point where it did clearly address the prejudice fraud. And if we think that his rewrite did that well enough, then if he was competent, then an F-entry hearing is required on this claim that he was pressured into his plea by a misrepresentation regarding the minimum sentence he faced and the likelihood that he was going to be, to end up with natural life. Alternatively, if your honors do not think that that prong was sufficiently addressed, then we ask you to vacate the order dismissing this petition and to remand this cause for second stage proceedings where competent counsel can consult with the petitioner, figure out exactly what it is he really is alleging factually, and present the lower court with an accurate, readable petition for post-conviction relief. Thank you, counsel. Thank you. At this time, the court will take the matter under advisement and render a decision of due course. The court stands in recess until the next case, which will be after lunch. Thank you.